**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

**UNITED STATES OF AMERICA**                    **CRIMINAL ACTION**

**VERSUS**                                                      **NO. 12-138**

**BURNELL ALLEN**                                    **SECTION "K"(1)**

## ORDER & REASONS

The Court held an evidentiary hearing on April 22, 2015, wherein the newly appointed defense counsel for Defendant, Burnell Allen, and the Government presented evidence as to the issue of whether Burnell Allen's trial counsel were ineffective by virtue of an actual conflict of interest. Upon the conclusion of the hearing, the Court instructed the parties to brief the issues pertaining to whether an actual conflict existed, namely whether there was a conflict of interest and any adverse effect it might have produced. The Court has reviewed the parties' memoranda on this point and finds that no actual conflict of interest existed for the reasons stated herein.

**I.      BACKGROUND**

On June 6, 2013, Defendant, Burnell Allen, was charged in a sixteen-count Superseding Indictment with the following charges: (1) Conspiracy to Possess and to Possess with the Intent to Distribute 280 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841 (b)(1)(A), and 846 (Count 1); and (2) Conspiracy to possess firearms in furtherance of a drug trafficking offense in violation of 21 U.S.C. § 924(o) (Count 2).  Superseding Indictment, R. Doc. 35, 1-7.

Three co-defendants maintained their innocence, and on November 3, 2014, the matter proceeded to trial.  Burnell Allen was represented by Jason Williams in this matter.  Nandi Campbell, an attorney associated with Mr. Williams's law practice, acted as a second-chair

1

counsel for Burnell Allen at trial.  The Government called seventeen witnesses over the course of three days, and at the close of the Government's case, the Defendant made an oral motion for judgment of acquittal under Federal Rules of Criminal Procedure Rule 29 urging that the Government's case was insufficient to carry its burden of proof beyond a reasonable doubt. The Court reserved ruling on the motion, but allowed Defendant to renew his motion at the conclusion of trial.  *See* Minute Entry, R. Doc. 210.  At the conclusion of trial, the Defendant again urged the motion with oral reasons and the Court reserved its decision and directed counsel submit written reasons for the motion.

The jury returned a verdict on November 6, 2014 of guilty against the Defendant on Count 1, the drug conspiracy count, and acquitted the Defendant on Count 2, which charged him with being a participant in a conspiracy to possess firearms in furtherance of drug trafficking crimes.  The Defendant filed a Motion for New Trial pursuant to Federal Rules of Criminal Procedure Rule 33 and a Motion for Acquittal on November 25, 2014. *See* R. Docs. 229 and 230.

Thereafter, the Court was informed that the Defendant's trial counsel[1] had potentially labored under a conflict of interest in that his trial counsel had formerly represented two of the Government's witnesses.  New counsel enrolled and, per this Court's order, submitted briefing to the Court on the issue.  *See* Minute Entry, Jan. 9, 2015, R. Doc. 260.  This Court ordered an evidentiary be held to further develop the factual issues pertaining to Defendant's trial counsel's potential conflict of interest. *See* Order, March 23, 2015, R. Doc. 293.  The hearing was held on April 22, 2015, and the parties submitted written memoranda thereafter supplementing their arguments as to whether Burnell Allen's trial counsel were ineffective due to an actual conflict of interest.

---

[1] Hereinafter, "trial counsel" will refer to Mr. Williams and Ms. Campbell.

## II.    LEGAL STANDARD

The issue of whether Burnell Allen's counsel labored under a conflict of interest has been

brought to the Court's attention post-trial.  In essence, the claim that his counsel was conflicted is

an ineffective assistance of counsel claim in violation of his Sixth Amendment right to effective

assistance of counsel.  *See* U.S. Const. amend. VI; *McMann v. Richardson,* 397 U.S. 759, 771

n.14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).  "Under the Sixth Amendment, if a defendant has a

constitutional right to counsel, he also has a corresponding right to representation that is free

from any conflict of interest." *United States v. Vaquero*, 997 F.2d 78, 89 (5th Cir. 1993)(citing

*Wood v. Georgia*, 450 U.S. 261, 271, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981)).

To establish an ineffective assistance of counsel claim, a defendant generally must

demonstrate that (1) counsel's performance fell below an objective standard of reasonableness,

and (2) counsel's deficient performance prejudiced his case. *Strickland v. Washington*, 466 U.S.

668, 692-93, 104 S. Ct. 2052, 2067, 80 L. Ed. 2d 674 (1984).  However, in *Strickland*, the

Supreme Court stated that, where the ineffective assistance of counsel claim is based on an actual

conflict of interest, the holding of the Court's earlier decision in *Cuyler v. Sullivan,* 446 U.S., at

345–350, 100 S.Ct., at 1716–1719, applies, which warrants a limited "presumption of prejudice,"

*Strickland,* 466 U.S. at 692-93.  In order to prevail on the ineffective assistance of counsel claim

based on an actual conflict of interest, the defendant "must show that [his] trial attorney was

acting under the influence of an actual conflict of interest that adversely affected his performance

at trial." *United States v. Infante,* 404 F.3d 376, 391(5th Cir. 2005)(citing *Cuyler v. Sullivan,* 446

U.S. 335, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980)). Thus, while *Strickland* requires a

showing that counsel's performance was deficient, in that a reasonable probability exists that

counsel's error changed the result of the proceeding, *Cuyler* permits a defendant "who raised no

objection at trial to recover upon a showing that an actual conflict of interest adversely affect counsel's performance." *Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000)("*Perillo II*").

### A.     Actual Conflict

Clarifying what the *Cuyler* Court meant by "actual conflict of interest," the Supreme Court in *Mickens v. Taylor* stated that the phrase "meant precisely a conflict *that affected counsel's performance*—as opposed to a mere theoretical division of loyalties" and that "a defendant who shows that a conflict of interest *actually affected the adequacy of his representation* need not demonstrate prejudice in order to obtain relief." 535 U.S. 162, 171, 122 S. Ct. 1237, 1243, 152 L. Ed. 2d 291 (2002)*.* The Supreme Court further clarified what the inquiry as to an actual conflict involves: "[T]he [*Cuyler*] standard is not properly read as requiring inquiry into actual conflict as something separate and apart from adverse effect. An 'actual conflict' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance."  *Id.* at 172 n.5, 112 S.Ct. 1237.

The Supreme Court in *Mickens* also acknowledged the Fifth Circuit's observation that Circuit Courts have applied *Cuyler* "unblinkingly" to "all kinds of alleged attorney ethical conflicts." *Id.* at 174, 122 S. Ct. 1237 (quoting *Beets v. Scott,* 65 F.3d 1258, 1266 (5th Cir. 1995)). The Court noted that it has not extended *Cuyler* to multiple representation cases involving obligations to *former* clients rather than concurrent representation of clients and cautioned against an expansive application of the rule. *Id.* at 175.  The Court reiterated that a defendant has established the constitutional predicate for his claim only if counsel "*actively represented* conflicting interests." *Id.* Thus, the Court declared that, while it is clear that *Cuyler* applies in cases of concurrent multiple representation, *Cuyler's* application in successive

4

multiple representation cases—conflicts between the attorney and former clients—"remains . . . an open question." *Id.* at 176.

Nevertheless, the Fifth Circuit has "never [limited the application of *Cuyler*] to concurrent representation cases in this circuit," and has applied the rule in successive multiple representation cases. *Perillo*, 205 F.3d at 797-98; *see also United States v. Infante*, 404 F.3d 376, 391, n.12 (5th Cir. 2005); *Burns,* 526 F.3d at 856-57 (5th Cir. 2008). The Fifth Circuit has noted that *Cuyler*'s legal precepts of "actual conflict" and "adverse effect" are "rather vague." *Perillo,* 205 F.3d at 782 (citation omitted). Rather than apply any categorical treatment to the facts of the case to ascertain whether an actual conflict exists, the determination of actual conflict is "tightly bound to the particular facts of the case at hand." *Perillo,* 205 F.3d at 782 (citation omitted); *see also United States v. Burns*, 526 F.3d 852, 856-57 (5th Cir. 2008)("The question of whether a disqualifying conflict exists is highly fact-dependent.").

In the context of successive representation cases, the Fifth Circuit has applied a more flexible, factually sensitive inquiry into the nature of the conflict, eschewing other Circuits' narrower approach. *Perillo*, 205 F.3d at 798. While other Circuits have established a separate standard for successive representation cases apart from concurrent representation cases, the Fifth Circuit "has not definitely embraced the theory that there is any real and inviolate substantive difference between" those conflicts of interest. *Id.* at 798. The Fifth Circuit has noted that "there is an obvious temporal relationship and the substantive relationship between the two representations" in concurrent representation cases "tend[s] to be closer," but the Fifth Circuit examines a number of other factors in light of the "guiding principle" in Sixth Amendment jurisprudence that counsel's allegiance to the accused must not be compromised by "competing obligations owed to other clients." *Id.* at 798. Factors that the Fifth Circuit has found to be

particularly relevant include: "(1) whether the attorney has confidential information that is helpful to one client but harmful to the other client; (2) whether and how closely related is the subject matter of the multiple representations; (3) how close in time the multiple representations are; and (4) whether the prior representation has been unambiguously terminated." *United States v. Burns*, 526 F.3d 852, 856 (5th Cir. 2008).  Thus, with regard to the factually sensitive inquiry, the Fifth Circuit has stated:

> [W]hether the facts of a particular case give rise to an actual conflict depends, not so much upon the label used to define the attorney's conflict, as upon these and any other factors that illuminate whether the character and extensiveness of the prior representation were such that counsel is prevented "by his interest in another's welfare from vigorously promoting the welfare of his [current] client."

*Id.* at 798 (citing *Vega,* 149 F.3d at 360).

### B.        Conflict of Interest

A conflict of interest exists "when defense counsel is compelled to compromise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client." *Perillo*, 205 F.3d at 781; *see United States v. Garcia-Jasso,* 472 F.3d 239, 243 (5th Cir. 2006).  However, a defendant must show more than a potential or hypothetical conflict.  *Infante,* 404 F.3d at 391. Although "[a]n attorney who cross-examines a former client inherently encounters divided loyalties," to demonstrate an actual conflict, "something more must be shown." *Perillo*, 205 F.3d at 802.  "It must be demonstrated that the attorney made a choice between possible alternative courses of action.... If he did not make such a choice, the conflict remained hypothetical." *United States v. Garcia-Jasso*, 472 F.3d 239, 243 (5th Cir. 2006)(citations and internal quotation marks omitted).

### C.        Adverse Effect

As opposed to the *Strickland* standard, which focuses on the effect upon the outcome of the trial or proceeding, the *Cuyler* standard focuses on "whether the actual conflict burdening counsel's performance had an actual and adverse effect on counsel's performance." *Perillo*, 205 F.3d at 806. "More specifically, '[a]n adverse effect on counsel's performance may be shown with evidence that counsel's judgment was actually fettered by concern over the effect of certain trial decisions on other clients.'" *Lee v. Cain*, 519 F. App'x 869, 879 (5th Cir.) *cert. denied*, 134 S. Ct. 217, 187 L. Ed. 2d 164 (2013)(quoting *Perillo*, 205 F.3d at 807)); *see Infante*, 404 F.3d at 393. Where the claim is premised upon what a conflicted lawyer failed to do on a defendant's behalf, the Fifth Circuit has held "that to show adverse effect, a [defendant] must demonstrate that some plausible defense strategy or tactic might have been pursued but was not, because of the conflict of interest." *Perillo v. Johnson*, 79 F.3d 441 (1996)("*Perillo I*"); *see also Infante*, 404 F.3d at 393.[2]

The showing of adverse effect "does not require a but for inquiry," and the defendant need only establish that there was a plausible alternative strategy that was not taken as a result of the conflict of interest. *Perillo*, 205 F.3d at 808. However, "[w]hile it is true that [the defendant] need not show prejudice 'in the sense that the outcome of the proceeding would have been different if it were not for [the] attorney's conflict of interest' in order to prevail, *Infante*, 404 F.3d at 391, he still must show that the *reason* [for the attorney's action] was his conflict of interest, *see Perillo*, 205 F.3d at 807." *Lee,* 519 Fed. Appx. At 880 (5th Cir. 2013). "The showing

---

[2] The Court notes Defendant's argument that adverse effect "*may* be established" (but is not required) with such evidence is based upon the Fifth Circuit's later opinion in *Perillo II* citing *Perillo I*. As a point of clarification, it appears that in *Perillo II* the Fifth Circuit stated: " 'Adverse effect' may be established with evidence that some plausible alternative defense strategy or tactic could have been pursued, *but was not because of the actual conflict impairing counsel's performance.*" *Perillo*, 205 F.3d at 781 (emphasis added). Notably, a single incorrectly placed comma in this sentence leads to the opposite rule: that adverse the alternative strategy was not taken because of some reason not including the actual conflict impairing counsel's performance. The Court will not rely on a single word ("may") extracted from this inartfully worded sentence in light of the clearly expressed rule in prior Fifth Circuit case law and the general requirement that a defendant must show how the conflict of interest actually affected counsel's performance when it is alleged that counsel failed to do something on a defendant's behalf.

must be that counsel was influenced in his basic strategic decisions by the interests [of the former client]." *Moss*, 3232 F.3d at 466 (citing *Wheat v. United States*, 486 U.S. 153, 160, 108 S.Ct. 1692, 100 L.Ed. 2d 140 (1988)(internal quotation marks omitted)).  The Fifth Circuit has never premised the finding of actual conflict or adverse effect "upon evidence that the attorney intentionally compromised his professional loyalites," and "it is enough that there was an error in judgment that adversely affected [the attorney's] performance."  *Perillo,* 205 F.3d at 807. Moreover, where the allegation is that the defense attorney failed to do something on behalf of the client, "[a]n alleged conflict of interest that obstructs the use of a particular strategy or defense is not significant unless the defense is *plausible*," or not inconsistent with the defense actually presented. *Foxworth v. Wainwright*, 516 F.2d 1072, 1080 (5th Cir. 1975)(emphasis added).

## III.    DISCUSSION

At the evidentiary hearing, it was established that Mr. Williams and Ms. Campbell did not inform Defendant, Burnell Allen, of their potential conflict of interest nor did they seek a waiver from him as counsel did not believe that a conflict of interest existed.  *See* Hearing Tr. 47:8-25; 101-102.  It was also established that defense counsel for the three co-defendants being tried in the federal conspiracy trial[3] became aware of the Government's witness list the Friday prior to the start of trial on the following Monday, that all counsel knew of the potential conflict of interest either through email or verbal discussion, and that no further action was taken at that time.

At the evidentiary hearing, it was established that Mr. Williams's practice involves primarily criminal work. Hearing Tr. 25:14-19.  Mr. Williams testified that his firm, Jason

---

[3] Hereinafter "federal conspiracy trial" refers to the instant case.

Rogers Williams & Associates, maintained 60-70 criminal cases at the time of the prior representations. Hearing Tr. 66:8-12. Mr. Williams employed other associate attorneys as well as contract attorneys at his firm. Hearing Tr. 26:5-12. Ms. Campbell worked as a contract attorney with Mr. Williams from January of 2010 to November of 2014. *See* Hearing Tr. 11; 88. Mr. Williams acknowledged that by virtue of Rule 1.10 of the Louisiana Rules of Professional Conduct, any conflict of interest would be imputed to all of the attorneys employed by him. Hearing Tr. 23-24; 26:9-18. Prior to Burnell Allen's trial, Mr. Williams's firm represented Eugene Allen and Nukema Frith, both of whom testified for the government during Burnell Allen's trial. Specifically, Mr. Williams primarily had represented Eugene Allen and Ms. Campbell primarily had represented Nukema Frith. The Government's witness list included Eugene Allen and Nukema Frith and was provided to all defense counsel in the federal conspiracy trial in a letter delivered three days before trial, as per this Court's usual practice.

It was established at the evidentiary hearing that Mr. Williams had represented Eugene Allen in four prior criminal cases in state court; however, it appears that, upon further review, Mr. Williams represented Eugene Allen in five state court cases. *See* Hearing Tr. 37:5-7 (defense counsel stated that Mr. Williams had represented Eugene Allen in four prior matters); Def. Mem. 9, R. Doc. 355 (noting that Mr. Williams had represented Eugene Allen in *five,* rather than four, criminal cases). In each case, Eugene Allen pled guilty. *See* Hearing Tr. 65:14-16; 37:5-38:8. Mr. Williams's representation of Eugene Allen began in the year 2000 and lasted until 2009, when Eugene Allen pled guilty in state court in 2009. Although no official letter of withdrawal was rendered, Mr. Williams has not represented Eugene Allen in any case since 2009. In the most recent state court case, Eugene Allen was a co-defendant of Burnell Allen and was charged with possession with intent to distribute crack cocaine. *See* Hearing Tr. 37:23-38:8. In that case,

either Mr. Williams or Robert Hjortsberg, an associate of the firm, appeared on behalf of Eugene Allen on fifteen occasions. The video evidence used in that case was also made a part of the evidence in the federal conspiracy trial against Burnell Allen through the testimony of Eugene Allen.

In addition, it was established that, although Mr. Williams was appointed as counsel for Nukema Frith, Nandi Campbell assumed representation of Nukema Frith in the only state court criminal matter on which Mr. Williams' firm represented Ms. Frith from 2011 to 2012. Ms. Campbell or one of two other associates from Mr. Williams' firm appeared 14 times on her behalf, and Ms. Campbell testified that she actively represented Ms. Frith for at least six months. *See* Hearing Tr. 107-108. In that case, Ms. Frith was charged with the following: attempted possession and possession of a firearm by a felon, possession with intent to distribute crack cocaine, attempted distribution of crack cocaine, and a multiple offender enhancement. Ms. Frith pled guilty in that case on October, 24, 2012, and was incarcerated; approximately one week after on November 1, 2012, she began cooperating with federal agents investigating the instant federal conspiracy case. She testified before the grand jury in relation to the federal conspiracy trial on March 14, 2013. At trial, Ms. Frith testified that she knew Burnell Allen for 20 years and regularly purchased crack cocaine from him. Although Ms. Frith testified that she believed that the Government could reduce her state court sentence based on word of mouth from others (who remain unknown),[4] she did not have a non-prosecution agreement with the Government or any other written deal with the Government in exchange for her testimony.

A. **Conflict of Interest**

The Defendant argues that Mr. Williams's prior representation of Eugene Allen and Ms. Campbell's prior representation of Nukema Frith created a conflict of interest under the *Cuyler*

---

[4] *See* Trial Tr. Doc. 355-3, 25-26.

10

standard.  As to Eugene Allen, Defendant contends that Mr. Williams's representation was neither transient nor insubstantial as he represented Eugene Allen for nine years, and in at least one case, made over fifteen appearances of record on behalf of Eugene Allen.  Defendant asserts that the fact that Mr. Williams claims that he obtained no confidential information from Eugene unbelievable.  The similarity of one prior state court case, which formed the basis for part of the federal conspiracy trial and evidence therein, also favors finding a conflict of interest according to the Defendant.

As to Nukema Frith, the Defendant points to the fact that her state court case was pending for over a year, that a preliminary hearing was held, and that Ms. Campbell or another associate made at least fourteen appearances of record on behalf of Ms. Frith.  In addition, Defendant notes the fact that Ms. Frith was serving a sentence on drug convictions. Similarly, the Defendant finds Ms. Campbell's assertion that she obtained no confidential information from Ms. Frith or had any opinion about her drug use to be incredible. Further, although she was not charged in the federal conspiracy case, Defendant notes that it was Ms. Frith's understanding that she could reduce the sentence of imprisonment she was currently serving for a state court charge by testifying in the federal trial. Finally, Defendant notes that Ms. Frith began cooperating with federal agents in November of 2012, one week after entering a guilty plea in state court.

In opposition, the Government contends that the Defendant misconstrues the nature of the state court representations by generally overstating the involvement of defense counsel and, in light of the reality of the context of such representations, finds Mr. Williams's and Ms. Campbell's testimony credible.

**1.    Eugene Allen**

The fact Mr. Williams represented Eugene in five prior state court cases over a period of nine years may reflect a non-transient and substantial relationship with the client. The Defendant construes the length of time over which these cases occurred and the amount of times counsel (or an associate) appeared on behalf of Eugene Allen as clear evidence of a substantial and not transient relationship. However, this categorical characterization of Williams' representation belies the reality of the practice of criminal law in Orleans Parish Criminal District Court and of Mr. Williams's practice. At the evidentiary hearing, Williams testified that, with clients generally, he would normally meet and have a fairly extensive discussion of the facts surrounding the charges on the first day retained and that from that point forward, most of the representation would involve ascertaining the accuracy of the police reports and the testimony of police officer witnesses. *See* Hearing Tr. 65:17-66:7; 32:14-20. Mr. Williams testified that he maintained 60 to 70 open cases and that, in general, on any given day of the week he would have at least five or six cases in Orleans Parish Criminal District Court. Hearing Tr. 66:8-25. Moreover, Mr. Williams testified that in Orleans Parish Criminal District Court in general, there was no way to ensure the brevity of any court representation because cases and related hearings are so frequently reset. Hearing Tr. 70:3-5.

In addition, Mr. Williams testified that, while he had represented Eugene in those five cases, he did not receive much contact or other communication from Eugene Allen while he was incarcerated. Hearing Tr. 69:16-24**.** Indeed, Mr. Williams testified that Eugene was not overly forthcoming even as to admitting the facts of his convictions and yet was not inclined to go to trial and desired a plea deal. 65:8-13; 66:4-7. Williams' representation and appearances thus appears to have been aimed at negotiation of plea deals. Moreover, Williams himself did not make all appearances on behalf of Eugene Allen; often appearances were made by Williams'

associates. In light of the "hundreds of cases" he handled, and the nature of Mr. Williams'

relationship with Eugene, it appears that Mr. Williams professional relationship, while not

transient in the literal sense, was not substantial. *See* Hearing Tr. 70:19. Thus, put into context,

the character and extent of the representation was not the lengthy and involved representation the

Defendant portrays.

In light of the character of his representation of Eugene Allen, Williams' statement that

he was not privy to any confidential information other than those which formed the facts of

conviction or were public record does not "def[y] common sense" as the Defendant alleges. R.

Doc. 355, 10. Mr. Williams testified that he had not obtained confidential information from

Eugene Allen in the course of his dealings with him. The Court finds trial counsel's testimony

credible and gives weight to the facts of the representations as well as trial counsel's candor with

the Court.[5] Given the realistic context of Mr. Williams's practice in Orleans Parish Criminal

District Court and based on the testimony provided about Williams' representation in general, it

is in fact believable that counsel's knowledge of information was limited to the facts of

conviction and did not obtain any confidential information from Eugene Allen.

Perhaps most importantly, Mr. Williams's representation of Eugene Allen ended in 2009,

five years prior to Burnell Allen's trial. Having had no intervening representation—Eugene

---

[5] Defendant relies on *United States v. Malpiedi*, 62 F.3d 465 (2d Cir. 1995), in asserting that Mr. Williams's and Ms. Campbell's testimony should be discredited. The Second Circuit gave no weight to the post-trial hearing or to the defense attorney's testimony. The Second Circuit deemed that "testimony by a lawyer precluded by a conflict of interest from pursuing a strategy or tactic is not helpful." *Id.* at 469. In the Fifth Circuit, the *Perillo* court opined that "after the fact testimony by a lawyer who was precluded by a conflict of interest from pursuing a strategy or tactic is not helpful," as "even the most candid persons" may convince themselves that an alternate strategy would not have been taken despite the conflict. Perillo, 205 F.3d at 807 (quoting Malpiedi, 62 F.3d at 470)(internal quotation marks omitted)). By contrast, the Supreme Court has given weight to district court evaluations, noting that the district court had the opportunity to witness "the legal talents and character of the lawyers" who practiced before the court and is "in a far better position . . . to evaluate" a charge of actual conflict. *Burger v. Kemp*, 483 U.S. 776, 784-785, 107 S.Ct. 3114, 3121, 97 L.Ed.2d 638 (1987). Given the Supreme Court's acknowledgment of the district court's opportunity to examine and evaluate witness testimony and the fact that this Court does not rely on the affected counsel's testimony alone but on the testimony of other witnesses and record evidence in making its decision, this Court will evaluate and give weight to Mr. Williams's and Ms. Campbell's testimony accordingly.

Allen retained other counsel for the federal conspiracy case—the prior representation is rather remote from the federal conspiracy trial.  Defendants cite the fact that no formal letter of termination or evidence official withdrawal exists in Eugene's state court case presumably as evidence that his representation has not unequivocally terminated.  Nevertheless, with the conclusion of the 2009 case with a guilty plea, it appears that all prior cases had resolved and his representation concluded.  Defense counsel's own well-established expert acknowledged that both Eugene Allen and Nukema Frith would be "former clients" under the Louisiana Rules of Professional Conduct.  *See* Hearing Tr., testimony of Leslie Schiff, 76:12-77:5. Thus, Mr. Williams's representation of Eugene Allen had terminated prior to Burnell Allen's federal trial.

In contrast to the temporality of these successive representations, the relationship of Mr. Williams's prior representation of Eugene Allen in one state court case with the instant federal conspiracy trial tends to support a conflict of interest.  Eugene Allen was a co-conspirator of Burnell Allen in the federal case and pled guilty prior to Burnell's trial.  Because he agreed to testify as a government witness, ostensibly Eugene Allen's interests were at odds with Burnell's.  In a prior state case where Jason Williams represented Eugene Allen, Burnell Allen was a co-defendant of Eugene Allen and was charged with possession with intent to distribute crack cocaine following surveillance of the 1300 block of Simon Bolivar.  The crimes charged in that case were part of the federal conspiracy with which Burnell Allen and Eugene Allen were charged, and the video surveillance of Burnell selling crack cocaine that formed the basis of the state trial was evidence intrinsic to the federal conspiracy trial.  Eugene Allen's testimony at the federal trial consisted of authenticating and testifying to his knowledge of a drug sale video picturing Burnell Allen selling drugs.  The similarity of the subject matter of the representation is plain.  However, as will be discussed, the Court finds that this factor supports a finding of a

conflict of interest only in the sense that it may be a potential ethical violation and not in the context of the *Cuyler* analysis.

**2.**     **Nukema Frith**

As to Nukema Frith, the Defendant argues that Ms. Campbell's representation of Ms. Frith in a single prior state court case was significant because Ms. Campbell and Mr. Williams's associates  "questioned witnesses at a preliminary hearing, and made at least 14 appearances on Ms. Frith's behalf."  R. Doc. 355, 12.  Defendant argues that the matter was pending over a year, which would demonstrate a substantial and significant relationship.  Again, as with Mr. Williams' representation of Eugene Allen, Defendant relies on the number of times counsel made an appearance and the length of time of the representation as deciding factors in evaluating the character of the representation.  Yet the reality of the representation was clarified through this Court's hearing.  Ms. Campbell did not make all fourteen appearances herself, and defense counsel established at the hearing that Ms. Campbell only actively represented Ms. Frith for sixth months out of the year it was pending.  Hearing Tr. 108:17-20.  Moreover, at the evidentiary hearing, Ms. Campbell recalled interacting with Ms. Frith as it related to her guilty plea; she could not recall, however, performing the initial interview of Ms. Frith.  Hearing Tr. 96:10-15.  Ms. Campbell also noted that another associate, Thomas (Tom) Schlosman, was also working with her on the case.  Hearing Tr. 95:8-21.  Ms. Frith confirmed and testified that her attorney in that case was "Thomas, Tom," that she recalled talking about her case with Tom, and recalled Ms. Campbell being present for sentencing.  *See* Hearing Tr. 116:18-20; 117:6-11.  Regardless of whether Ms. Campbell herself questioned witnesses at the preliminary hearing, she represented Ms. Frith actively for a brief period of time and Ms. Frith entered a guilty plea in October of 2012.  Thus, as both Ms. Campbell's and her client's testimonies demonstrated, the character of

the representation by Ms. Campbell cannot be deemed substantial.  The Court also finds Ms. Campbell's testimony at the evidentiary hearing that she did not obtain any confidential information from her representation of Nukema Frith believable in this context.

Finally, the only evidence of the relation between the two representations Defendant offers is Ms. Frith's belief that her testimony in the federal trial might reduce her prior state sentence in the case Ms. Campbell had represented her.  Hearing Tr. 117:23-118:4.  First, it was established at trial that the Government did not offer Ms. Frith any deal in exchange for her testimony.  Trial Tr., R. Doc. 355-3, at 15.  At trial, Ms. Frith's belief at that time was based on her "hearing" about the potential to reduce her sentence from persons she could neither identify nor recall—a belief which appeared both uncertain and unfounded.  *See* Trial Tr. Doc. 355-3, at 25-26, 32, 34-35.  Moreover, the prior state case does not relate to the facts of the instant federal conspiracy.  Though her prior state court case involved four counts related to drugs and possession of a firearm, she was not indicted in the federal conspiracy case.  While she testified that she purchased drugs from Burnell Allen and that he possessed a gun during those transactions, defense counsel offer no facts indicating that the prior case had any bearing on the federal conspiracy trial involving Burnell Allen and the co-defendants.

### 3.      Relevant Fifth Circuit Case Law Applied

Defendant relies upon the facts of *United States v. Infante*, comparing them to the instant case and arguing that the facts of this case likewise show a conflict of interest.  *See* 404 F.3d 376. In *Infante*, an attorney, currently representing Infante who was charged with conspiracy, had represented two government witnesses in their own separate cases in which they pled guilty; the attorney noted that he would seek substantial assistance motions under Rule 35 for these witnesses. *Id.* at 390. The Fifth Circuit found that, while the attorney testified that he had no

confidential information from his former clients, the former and the current representations were

"nearly identical." *Id.* at 392. In addition, the representations had not been unambiguously

terminated, because the attorney indicated that he would seek a substantial assistance motion

from the government for their testimony against his current client. *Id.* Even if the representation

had been terminated, the Fifth Circuit noted that the representations were close in time. *Id.* The

Fifth Circuit concluded that the attorney was in a position conducive to divided loyalties because

he had to choose between vigorously cross-examining his former clients (and jeopardize their

substantial assistance motions) and not vigorously cross-examining them (and allowing the

Government to prove an essential element of the case against his current client). *Id.* at 392-93.

By contrast, in *United States v. Burns*, 526 F.3d 852 (5th Cir. 2008), the Fifth Circuit

found that an attorney did not have an actual conflict of interest where (1) the attorney had

represented a government witness in an asset forfeiture proceeding four years prior to his current

client's trial; (2) the representation was unequivocally terminated; (3) the previous representation

bore no relation to the current case; (4) the attorney had limited contact with the former client;

and, (5) out of an abundance of caution, the affected attorney's co-counsel cross-examined the

witness. *Burns*, 526 F.3d at 857.

Mr. Williams' representation of Eugene Allen was not close in time as it terminated four

years prior to trial, and as in *Burns*, did not involve extensive contact with the client. Similarly,

Ms. Campbell's representation terminated two years prior to trial and involved even less

association with her client. Each attorney cross-examined the other's former client. Moreover,

whereas the attorney in *Infante* still intended to file substantial assistance motions in his former

clients' interests (and adverse to his current client's interest), neither Mr. Williams nor Ms.

Campbell encountered this risk as their representations had unquestionably terminated and no

motions would be filed on their behalf based on their trial testimony against Burnell Allen.  Still, Williams' representation of Eugene Allen in the prior state court case forming part of the basis for the federal conspiracy trial suggests that, as in *Infante*, a conflict of interest existed.

The Court remains mindful, however, of the open question addressed by the Supreme Court.  In *Moss v. United States*, the Sixth Circuit directly addressed the *Cuyler* standard in the context of successive representation cases, noting that "[i]t is more difficult for a defendant to show that counsel actively represented conflicting interests in cases of successive rather than simultaneous representation." *Moss v. United States*, 323 F.3d 445, 459 (6th Cir. 2003). The Sixth Circuit examined *Mickens* closely, concluding that, at that point in time, "in the wake of *Mickens*, no court has applied the [*Cuyler*] presumption to a case of successive representation." *Id.* at 460.  However, in that case, the *Moss* court reasoned that, unlike the traditional successive representation scenario involving cross-examination of a former client in when the former representation bore a "substantial relation" to the current proceedings, the representations in that case were "nearly identical" and "shared more than a substantial relatedness."  *Id.* at 462.  In that instance, the "probability of prejudice dramatically increases." *Id.*  Indeed, in the Fifth Circuit, where the representations were close in time and "nearly identical" in subject matter, as in *Infante*,[6] and where counsel simultaneously actively represented former clients' adverse interests, as in both *Infante* and *Perillo*,[7] the Fifth Circuit has found a conflict of interest existed.

---

[6] The Fifth Circuit found that *Mickens* Court's distinction between concurrent and successive representations would not resolve Infante's successive representation case. The Fifth Circuit held that, in addition to being closely related in subject matter and in time, Infante's case was "unique because Attorney Foster indicated that he would actively lobby the government to file a Rule 35 motion on behalf of Gallegos–Natera and Rivera–Hernandez if they testified against his client Infante." *See Infante*, 404 F.3d at 391, n.12 (5th Cir. 2005).

[7] *Perillo*, 205 F.3d at 803-04 ("[The attorney's] agreement to represent [the former client] after [the current client's] trial began makes this case most closely anaologous to those cases in which counsel is still actively representing the potentially adverse interest close to or during trial."). In *Perillo*, Attorney Skelton represented his former client by assisting her in resisting providing testimony at her co-defendant's (and the Attorney's current client's) trial. *Id.* at 804.

As Defense counsel's expert witness made clear, Mr. Williams and Ms. Campbell would owe a duty under the Rules of Professional Conduct to refrain from representing another person in the same or substantially related matter in which that person's interests are materially adverse to the former client's interests unless the former client gives written consent. La. State Bar Art. 16, Rule of Professional Conduct 1.9.  Here, it appears that there is at least the potential for a conflict under the ethical rules as to Eugene Allen, dividing Mr. Williams's loyalties; in light of the evidence brought forth, the potential for a violation of the ethical rules approaches reality. Whether the facts of this particular case create lingering doubt as to whether counsel were truly free of a conflict of interest under the professional rules of conduct, however, is not the appropriate standard.  As the Supreme Court stated: "The purpose of our [*Cuyler* exception] from the ordinary requirements of *Strickland,* however, is not to enforce the Canons of Legal Ethics, but to apply needed prophylaxis in situations where *Strickland* itself is evidently inadequate to assure vindication of the defendant's Sixth Amendment right to counsel." *Mickens*, 535 U.S. at 176, 122 S. Ct. 1237 (citing *Nix v. Whiteside,* 475 U.S. 157, 165, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986)("[B]reach of an ethical standard does not necessarily make out a denial of the Sixth Amendment guarantee of assistance of counsel")).

In keeping with the analysis in *Perillo,* the Fifth Circuit looks not only to the relation of the subject matter of the representations but at a number of factors.  While a potential violation of a rule of professional conduct may be a factor in the Court's decision, it is not the only deciding factor.  The Court notes that, though Eugene Allen's prior state court case may be substantially related to the federal conspiracy trial, the prior case was not truly "identical" as it did not involve a conspiracy charge.  The ultimate question is whether, based on the relationship of the prior representation to the current representation, counsel would be prevented from

19

vigorously promoting the welfare of his current client out of interest in a former client's welfare. *See Perillo*, 205 F.3d at 798-99.  The Court has no reason to doubt trial counsel's testimony that no confidential information resulted from this prior, related representation such that Mr. Williams's loyalties would be divided.  In light of the analysis above, the Court cannot conclude that a conflict of interest existed that prevented either Mr. Williams or Ms. Campbell from vigorously promoting the welfare of Burnell Allen.  Nevertheless, even if the Defendant were able to demonstrate a conflict of interest, the Court finds that no adverse effects on trial counsel's performance occurred as a result of trial counsel's successive representations.

### B.    Adverse Effects

As to Mr. Williams's representation of Eugene Allen, the Defendant makes the following arguments that his performance was adversely affected by a conflict of interest.  First, Defendant notes that "[n]o discovery motions were filed, no pretrial motions were filed, and no motions *in limine* were filed," and suggests that neglecting to take these actions "is either ineffective counsel *per se*, or the inactivity of an attorney laboring under a conflict of interest." R. Doc. 355, 15. Second, Defendant argues that trial counsel for Burnell Allen failed to cross-examine the government witnesses properly, identifying potential points of examination for both Eugene Allen and Nukema Frith. Finally, the Defendant asserts that Mr. Williams's closing argument, in which he made mention of the video evidence from Burnell Allen's state court case and his conviction in that case, as improper and attributable to a conflict or ineffectiveness. R. Doc. 355, 19.

The Government argues that Defendant's argument is inherently flawed as it is not in accord with the legal standard.  "The legal test is not whether there may have been a better approach to these issues by defense counsel . . . as a hypothetical matter, but rather whether

defense counsel's [] conduct resulted in an actual conflict that had an adverse effect on defendant's representation," the Government stated, and "Defendant's drumbeating that defense counsel did not arguably follow 'best practices' is an attempt to confuse the legal issue at hand…" R. Doc. 359, 5.  Thus, the Government argues hypothetical courses of action posed by Defendant were not plausible and even potentially detrimental to the overall defense strategy for Burnell Allen at trial.

Generally, the Court agrees that the Defendant consistently misstates the law on adverse effect: the Defendant offers potential strategies or courses of action not taken and asserts that such strategies were "plausible" though they need not be "mandatory." *See* Def. Reply 6, R. Doc. 358.[8]  Yet Defendant consistently offers no argument as to how any course of conduct was taken *because* of the conflict of interest.  The standard cannot be that a defendant may demonstrate ineffective assistance of counsel under *Cuyler* and presume prejudice by simply posing hypothetical alternative strategies that a defense attorney could have taken. To do so would render the second part of the inquiry under *Cuyler* meaningless and allow a presumption of prejudice with the simple demonstration of merely theoretically possible courses of action.  As the Fifth Circuit once stated:

> In the trial of lawsuits, as in war, victory finds a thousand fathers, defeat is an orphan. It is always possible to conjecture that defense counsel could have done more—conducted more investigation, called more witnesses, or engaged in more cross-examination—and that these additional efforts might have altered the result. That is not, however, the standard under which we review counsel's conduct. Although counsel's arguments failed to persuade the jury not to convict [the defendant] . . . they do not indicate that counsel's performance was "outside the wide range of professionally competent assistance."

---

[8] Defendant cites *Malpiedi*, 62 F.3d at 469, again in support of its contention that the plausible line of defense *may* be established but is not *required* or *mandatory.* See Def. Reply 5, R. Doc. 358. In light of Fifth Circuit jurisprudence holding that, where the defendant asserts counsel failed to do something on his behalf, the defense indeed must show that an action must have been taken because of the conflict of interest.

*Kirkpatrick v. Butler*, 870 F.2d 276, 285 (5th Cir. 1989)(citations omitted).  Thus, the Court remains mindful of the gravity of presuming prejudice: in the universe of potential alternative strategies, only some strategies rise to the level of a constitutional violation demonstrating ineffective assistance of counsel.  Where the alternative course of conduct is not inconsistent with the overall defense strategy, the alternative would be "plausible." *See Foxworth v. Wainwright*, 516 F.2d 1072, 1080 (5th Cir. 1975).  The standard is not that the defendant must show that the alternative course was "mandatory," as Defendant suggests.  As stated above, the defense almost must show not only that the alternatives that were *plausible* and were not taken *because of the conflict of interest*; the conflict must become more than merely speculative or hypothetical and counsel's representation "actually fettered" by the conflict.

Proceeding to the actual analysis on this point, it appears that the Defendant has little to offer as possible adverse effects on counsel's performance.[9]  First, the Defendant points to the fact that during trial counsel's representation of Burnell Allen, no discovery or pretrial motions were filed nor were any motions in limine filed.  Assuming that filing these motions would be a plausible alternative defense that counsel did not take, Defendant simply assumes that the lack of doing so was ineffective or a result of a conflict of interest. Defendant makes these assumptions without identifying with any specificity what facts make this course of action plausible much less how it was a result of a conflict of interest.

---

[9] The Court notes that although the Defendant's first memorandum states that he may demonstrate both actual conflict and adverse effect based on the evidence at trial and that presented at the hearing, the Defendant later states in his reply memorandum that defense counsel did not fully explore the issue of adverse effect at the hearing. Nevertheless, the Defendant continues in his Reply to state that it is a "moot point"—"the evidence adduced at the first hearing provided the Court with more than enough evidence to grant Burnell Allen a new trial" and that "no further hearings are necessary."  R. Doc. 358, at 2; R. Doc. 355, at 2.  The Court agrees in part and notes that, while adverse effects are not always readily apparent from the record, the Court's examination of the record in addition to its involvement in the instant federal case from the pre-trial stage through its current post-trial state have provided ample evidence to determine whether that counsel's potential conflict had an adverse effect on Burnell Allen's trial counsel's performance. *See United States v. Greig*, 967 F.2d 1018, 1024 (5th Cir. 1992)(relying on record alone to examine adverse effects).

Second, the Defendant argues that trial counsel failed to vigorously cross-examine Eugene Allen and Nukema Frith on various points.  Defendant asserts that trial counsel's failure to cross-examine on these points must "necessarily" fall into one of three undesirable categories: counsel was pulling their punches because of remaining loyalty, counsel was unprepared, or counsel was just ineffective.  R. Doc. 355, at 16. This harsh categorical treatment of trial counsel's performance, adopted from hindsight, obscures the reality of trial counsel (or indeed any attorney's) performance at trial.  *Contra Foxworth*, 516 F.2d at 1080 (5th Cir. 1975).  How defense counsel must "necessarily" reach this conclusion, when counsel for all three co-defendants at trial knew of this potential conflict, is befuddling.  Even more bewildering is the defense counsel's suggestions of alternative courses of action, none of which would have been consistent with trial strategy much less helpful to the Defendant.  In fact, as the Government points out in each instance, the un-examined lines of questioning would tend to undermine the defense and the cross-examination actually performed served to support the defense or undermine the credibility of the witness.  Moreover, this Court finds both Mr. Williams and Ms. Campbell were vigorous and effective advocates for their client throughout the trial.

Defendants asserts that trial counsel should have cross-examined Eugene Allen on (1) his prior heroin sales, (2) his alleged one-time possession of a firearm, and (3) his alleged false statements made to obtain a plea deal in state court.  The Court does not find these suggested lines of cross-examination plausible.  Defendant asserts that Ms. Campbell failed to cross examine Eugene Allen on his prior heroin convictions which occurred during the period of time the cocaine conspiracy was alleged to have occurred, which could have lessened the amount of cocaine attributed to the conspiracy. Cross-examining Eugene Allen on heroin sales has no bearing on the amount of cocaine he allegedly sold in the conspiracy and would not have been

consistent with the defense strategy.  Through cross-examination at trial, trial counsel elicited testimony from Eugene that he and Burnell Allen and were not selling cocaine together, which would rebut the allegation the charge of conspiracy to sell drugs.  As the Government acknowledged, trial counsel effectively turned Eugene Allen into a witness for the defense.[10] Thus, impeaching Eugene Allen on his one-time possession of a gun or his alleged statement that he did not possess the gun would have undermined his credibility as well as the defense strategy. It is noteworthy that, despite no cross-examination on the gun-related matters, Burnell was *acquitted* of the gun conspiracy charge, the only other charge brought against him.  In light of the fact that video evidence unquestionably showed Burnell Allen selling crack cocaine, focusing on the fact that Eugene testified that Burnell and Eugene sold drugs independently was likely the best (and perhaps only) strategy available to the defense.[11]  In sum, these alternative courses of questioning would not be plausible in light of the defense.  Also, the cross-examination was based on non-confidential information that was public record, and the Defendant has not shown that this strategy was taken because of the conflict.  The Court does not find, therefore, that the failure to pursue these alternatives adversely affected trial counsel's performance.

As to the cross-examination of Nukema Frith, Defendant argues that trial counsel should have impeached Ms. Frith on the following: (1) her statements made to the grand jury that she was not familiar with guns (contrasted with the evidence of her prior gun conviction); (2) her statement made to the grand jury that she had purchased drugs through 2011 (contrasted with

---

[10] Trial Tr., R. Doc. 355-3, at 52.
[11] Defendant argues that, contrary to Mr. Williams's statement at the evidentiary hearing that he believed impeaching Eugene extensively would not be a "smart" strategy, that the focus should be on the fact that it was possible *at all*.  *See* Def. Mem., R. Doc. 355, 17.  The Court notes that this issue relates to whether a potential conflict of interest exists, where two clients represented by a single attorney may possess adverse interests in relation to each other. Yet the Defendant must show more than the potential for a conflict and more than the potential, as here, for a possible strategy. The Defendant must show that the alternative course of action was not taken *because of* the conflict of interest; in that respect, the Defendant has not met the requisite showing that Mr. Williams did not pursue these questions because of a conflict of interest.

trial testimony that she stopped using crack cocaine in 2008); (3) her statements evidently made to Ms. Campbell that she wanted a plea deal; and (4) that Ms. Frith knew a woman named "Apple" and purchased drugs from her.

The Court notes that it is possible that Ms. Frith was not "familiar" with guns despite being convicted of possessing one.  At trial, Ms. Frith testified that she saw Burnell Allen with a gun in the back of his pants. Trial Tr. R. Doc. 355-3, at 10.  She later testified on cross-examination by Mr. Williams that, when asked about Burnell's alleged possession of a gun, she was not "familiar with guns."  Trial Tr., R. Doc. 355-5, at 19.  Mr. Williams went on to question her about details of the appearance of the gun to which she could not recall any detail other than the color.  Trial Tr. R. Doc. 355-5, at 20.  Defendant implies that a possession charge would indicate her familiarity with guns, contrary to her assertion—yet her familiarity with guns could support her assertion that she saw a partly hidden gun on Burnell Allen.  Again, the Court does not find this line of cross-examination plausible in light of the defense strategy pursued.

Similarly, Ms. Frith's statements about her drug purchases in 2011 did not specify the type of drug, which could have been cocaine or heroin.  Ms. Frith testified at trial that she had been convicted for both cocaine and heroin possession. *See* Trial Tr. 355-5, at 6.  Without any factual confirmation of what type of drugs her statement referred to, the Court cannot evaluate the potential "plausible" nature of this single question.  Indeed, impeaching her on her continued drug use might serve only to harm the Defendant's case by increasing the likelihood that she did, in fact, purchase drugs repeatedly from Burnell Allen.  Ms. Frith also testified that she did not know who "Apple" was at trial, although the Defendant Burnell Allen states that she did know Apple and purchased drugs from her. *See* Trial Tr., R. Doc. 355-5 at 19; Def. Mem. 355, 18. Yet Mr. Williams's follow-up question was whether Ms. Frith had stated that she bought drugs from

anybody she could buy them from in that area, to which Ms. Frith answered affirmatively. *See* Trial Tr. R. Doc. 355-3, at 19.  Though he did not further pursue this line of questioning, in stark contrast to the Defendant's assertion that Mr. Williams did not cross-examine Ms. Frith's desire to obtain a good deal, Mr. Williams extensively vetted the issue by questioning her motive for testifying and whether she desired any more time in state prison. *See* Trial Tr. R. Doc. 355, at 21-22.  To the extent that this would appear to be confidential information, Ms. Campbell testified at the evidentiary hearing that Ms. Frith made her desire to obtain a deal to reduce her sentence known to "everybody who was in court, even her co-defendant."  *See* Hearing Tr., 102:10-21.  Furthermore, the Defendant has not demonstrated that the failure to pursue any of these questions cross-examination was a result of a conflict of interest.

Finally, although Defendant takes umbrage at Mr. Williams's style of closing argument, the Court does not find that Mr. Williams's presentation of the facts ineffective or even unwise. *See* Def. Mem. 19, R. Doc. 355. In his closing, Mr. Williams acknowledged the uncontroverted facts presented by video evidence that Burnell Allen sold crack cocaine and was convicted in state court for that crime.  His strategy attempted to garner credibility with the jury and focused on the legal issue at hand—demonstrating a *conspiracy* to commit these drug crimes and possess firearms.  His closing was also consistent with the defense strategy in the cross-examination of Eugene Allen.  In this Court's opinion, to have argued otherwise would have been sheer folly.

The Defendant has not "demonstrate[d] that the attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other." *Moss*, 323 F.3d at 463-64.  On the whole, any cross-examination or argument presented by motion not explored by trial counsel here was clearly not the result of judgment having been "actually fettered by concern over the effect of certain trial decisions on

other clients." *Lee*, 519 Fed. Appx. at 880 (citing *Perillo*, 205 F.3d at 807). As to the cross-examinations of Eugene Allen and Nukema Frith, the Court notes that whether the choice to employ the alternative courses of action was to avoid an alleged conflict or simply part of trial strategy does not answer the relevant question: the Court finds that neither Mr. Williams nor Ms. Campbell were restrained by conflicting interests from active representation of their former clients and current client. Here, where the trial counsel vigorously and successfully cross-examined their former clients, evidencing no reluctance and no indication that the former clients' interests were in mind at that time, the Court finds that the record "utterly fails to show" that trial counsel's performance was adversely affected in any way. *See United States v. Olivares*, 786 F.2d 659 (5th Cir. 1986). Because the Defendant has not established that defense counsel avoided exploring such questions because of a conflict of interest, the Court finds that any conflict of interest—if it existed at all—did not adversely affect trial counsel's performance.

## IV.   CONCLUSION

The Court construes as a motion the Defendant's request to file a supplemental motion relative to the pending Motion for New Trial based on his argument that an actual conflict of interest rendered his trial counsel ineffective. *See* Minute Entry, Jan. 9, 2015, R. Doc. 260; Def. Mem., R. Doc. 270; Def. Mem. R. Doc. 355. The Court finds that based on the facts presented through testimony and exhibits at the evidentiary hearing and the record evidence in this case, no actual conflict of interest adversely affecting trial counsel's performance existed. Therefore, the Court also finds that the Defendant's Rule 33 motion, as originally filed, need not be supplemented based on this issue and the Court will address the substance of that motion in a separate ruling.

Accordingly,

**IT IS ORDERED** that the Defendant's motion to file supplemental motion for new trial is **DENIED**.

New Orleans, Louisiana, this 25th day of _____June_____, 2015.


_____
**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT JUDGE**