# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 12-138** |
| **BURNELL ALLEN** | **SECTION "K"(1)** |

## ORDER AND REASONS

Before the Court is Defendant Burnell Allen's Motion for Judgment of Acquittal (R. Doc. 230) and Motion for New Trial (R. Doc. 229). Having reviewed the motions, memoranda, record, and relevant law, the Court DENIES the motions for reasons stated herein.

## I.      BACKGROUND

On June 6, 2013, Defendant, Burnell Allen, was charged in a sixteen-count Superseding Indictment with the following charges: (1) Conspiracy to Possess and to Possess with the Intent to Distribute 280 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841 (b)(1)(A), and 846 (Count 1); and (2) Conspiracy to possess firearms in furtherance of a drug trafficking offense in violation of 21 U.S.C. § 924(o) (Count 2). Superseding Indictment, R. Doc. 35, 1-7.

Three co-defendants maintained their innocence, and on November 3, 2014, the matter proceeded to trial. The Government called seventeen witnesses over the course of three days, and at the close of the Government's case, the Defendant made an oral motion for judgment of acquittal under Federal Rules of Criminal Procedure Rule 29 urging that the Government's case was insufficient to carry its burden of proof beyond a reasonable doubt. The Court reserved ruling on the motion, but allowed Defendant to renew his motion at the conclusion of trial. *See* Minute Entry, R. Doc. 210. At the conclusion of trial, the Defendant again urged the motion

with oral reasons and the Court reserved its decision and directed counsel submit written reasons for the motion.

The jury returned a verdict on November 6, 2014 of guilty against the Defendant on Count 1, the drug conspiracy count, and acquitted the Defendant on Count 2, which charged him with being a participant in a conspiracy to possess firearms in furtherance of drug trafficking crimes.  The Defendant filed a Motion for New Trial pursuant to Federal Rules of Criminal Procedure Rule 33 and a Motion for Acquittal on November 25, 2014. *See* R. Docs. 229 and 230.

**A.**      **Motion for Acquittal**

A motion for judgment of acquittal challenges "the sufficiency of the evidence to convict." *United States v. Hope*, 487 F.3d 224, 227 (5th Cir. 2007)(quoting *United States v. Lucio,* 428 F.3d 519, 522 (5th Cir.2005)). Rule 29(a) of the Federal Rules of Criminal Procedure provides that after the government closes its evidence or after the close of all evidence, on a defendant's motion, the court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." As the Supreme Court stated in *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), "[t]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See also United States v. Hope,* 487 F.3d at 227–28.  The court determines "only whether the jury made a rational decision, not whether its verdict was correct on the issue of guilt or innocence." *United States v. Dean*, 59 F.3d 1479, 1484 (5th Cir. 1995)(citation omitted). "[I]f the fact finder was presented with sufficient evidence to support the verdict reached, that verdict must be upheld." *Lucio,* 428 F.3d at 522.

In viewing the evidence in the light most favorable to the prosecution, the court must "consider the countervailing evidence as well as the evidence that supports the verdict in assessing sufficiency of the evidence." *United States v. Moreland*, 665 F.3d 137, 149 (5th Cir. 2011)(quoting *United States v. Brown,* 186 F.3d 661, 664 (5th Cir.1999)); *see United States v. Peterson*, 244 F.3d 385, 389 (5th Cir.2001) ("All evidence is considered, not just that supporting the verdict, but the evidence need not conclusively disprove alternatives; the jury is free to choose among reasonable constructions of the evidence.").  The court must also draw upon "*reasonable* inferences from the evidence to support the verdict." *United States v. Percel,* 553 F.3d 903, 910 (5th Cir.2008) (quoting *United States v. McDowell,* 498 F.3d 308, 312 (5th Cir.2007)) (emphasis added).  Though the court may not "weigh[] the evidence or assess[] the credibility of witnesses," *United States v. Lopez*, 74 F.3d 575, 577 (5th Cir. 1996)(citations omitted), "[a] verdict may not rest on mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference." *United States v. Moreland,* 665 F.3d 137, 149 (5th Cir.2011) (quoting *United States v. Rojas Alvarez*, 451 F.3d 320, 333-34 (5th Cir. 2006)).

Nevertheless, "[t]he evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence." *United States v. Mendoza*, 522 F.3d 482, 488 (5th Cir. 2008) (quoting *United States v. Ortega Reyna*, 148 F.3d 540, 543 (5th Cir.1998)). "Circumstances altogether inconclusive, if separately considered, may, by their number and joint operation, especially when corroborated by moral coincidences, be sufficient to constitute conclusive proof." *United States v. Vasquez*, 677 F.3d 685, 692 (5th Cir.2012).  "But the evidence presented must allow the jury to find every element of the offense beyond a reasonable

doubt." *United States v. Uvalle–Patricio*, 478 F.3d 699, 701 (5th Cir.2007) (internal quotation and citation omitted).

### B.    Motion for New Trial

Rule 33 states that, upon the Defendant's motion, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33; *United States v. Wall*, 389 F.3d 457, 466 (5th Cir. 2004). "The burden of demonstrating that a new trial is warranted 'in the interest of justice' rests on the defendant." *United States v. McElwee,* 2010 WL 235007, *2 (W.D.La. Jan. 15, 2010) citing *United States v. Soto–Silva,* 129 F.3d 340, 343 (5th Cir.1997).  Rule 33 motions are not favored and are viewed with great caution. *United States v. Blackthorne,* 34 F.3d 449, 452 (5th Cir.2004). "The grant of a new trial is necessarily an extreme measure, because it is not the role of the judge to sit as a thirteenth member of the jury." *United States v. O'Keefe,* 128 F.3d 885, 898 (5th Cir.1997); *but see United States v. Robertson,* 110 F.3d 1113, 11120 n. 11 (5th Cir.1997).

"Motions for new trial are based either on the grounds that the verdict was against the weight of the evidence or that some error was committed by the court or the prosecution which substantially affects the rights of the accused." *United States v. Simms*, 508 F. Supp. 1188, 1202 (W.D. La. 1980).  In the Fifth Circuit, "the generally accepted standard is that a new trial ordinarily should not be granted unless there would be a miscarriage of justice or the weight of evidence preponderates against the verdict." *United States v. Wright,* 634 F.3d 770,775 (5th Cir. 2011); *see Wall*, 389 F.3d at 466.

Unlike the Rule 29 motion where the evidence must be viewed in a light most favorable to the verdict, in determining whether to grant a Rule 33 motion, the Court "may weigh the evidence and may assess the credibility of the witnesses during its consideration of the motion

for new trial." *United States v. Tarango*, 396 F.3d 666, 672 (5th Cir. 2005)(citing *Robertson*, 110 F.3d at 1117). "[T]he decision to grant or deny a motion for new trial based on the weight of the evidence is within the sound discretion of the trial court." *United States v. Robertson*, 110 F.3d 1113, 1118 (5th Cir. 1997). Thus, the court has broad discretion to grant a new trial "in the interest of justice." *United States v. Scroggins*, 379 F.3d 233 (5th Cir.2004), *vacated on other grounds*, 543 U.S. 1112, 125 S.Ct. 1062, 160 L.Ed.2d 1049 (2005); *United States v. Antone*, 603 F.2d 566 (5th Cir. 1979). Deference is given to the district court because it actually observed the demeanor of witnesses and their impact on the jury. *Wall,* 389 F.3d at 465; *O'Keefe,* 128 F.3d at 893. "[E]vidence which merely discredits or impeaches a witnesses' testimony does not justify a new trial." *United States v. Blackthorne*, 378 F.3d 449, 455 (5th Cir. 2004)(citation omitted). A new trial may be appropriate where the evidence only tangentially supports a guilty verdict and the evidence "preponderates sufficiently heavily against the verdict such that a miscarriage of justice may have occurred." *Tarango*, 396 F.3d at 672 (citations omitted). However, the court must not usurp the jury's function "or simply set aside a jury's verdict because it runs counter to result the district court believed was more appropriate." *Id.* at 672 (citations omitted).

## III.    DISCUSSION

In his Motion for Judgment of Acquittal, Defendant asserts that the evidence was insufficient to sustain his conviction of the drug conspiracy charge in Count 1 for the following reasons: (1) the evidence established multiple conspiracies rather than a single conspiracy as charged; (2) the evidence failed to demonstrate that any conspiracy involved 280 grams or more of crack cocaine; and (3) the statute of limitations set forth in 18 U.S.C. § 3282(a) prohibits his conviction. In his nearly identical Motion for New Trial, Defendant presents the very same reasons in support of his argument that the weight of the evidence preponderates so heavily

against the verdict that a miscarriage of justice occurred and that the Court should grant a new trial on this basis.  The Court will thus address each argument under the appropriate standard.

### A.    Elements of Narcotics Conspiracy and Multiple Conspiracies

To prove conspiracy under 21 U.S.C. § 846, the government must prove beyond a reasonable doubt that: "(1) an agreement existed between two or more persons to violate federal narcotics law, (2) the defendant knew of the existence of the agreement, and (3) the defendant voluntarily participated in the conspiracy." *United States v. Ochoa,* 667 F.3d 643, 648 (5th Cir. 2012).

The Government need not show that a defendant entered into an express agreement to show that the defendant engaged in a conspiracy: "[A] tacit, mutual agreement with common purpose, design, and understanding will suffice." *United States v. Daniels*, 723 F.3d 562, 575 (5th Cir. 2013) *modified in part on rehearing,* 729 F.3d 496 (5th Cir.2013) (citing *United States v. Zamora,* 661 F.3d 200, 209 (5th Cir.2011)(internal quotation marks omitted)). "Concert of action can indicate agreement and voluntary participation"; "[t]he surrounding circumstances may establish knowledge of a conspiracy"; and, more importantly, "[a] conspiracy agreement may be tacit, and the trier of fact may infer an agreement from circumstantial evidence." *United States v. Quiroz-Hernandez*, 48 F.3d 858, 866 (5th Cir. 1995), *as modified on reh'g* (May 8, 1995)(quoting *United States v. Thomas,* 12 F.3d 1350, 1356–57 (5th Cir. 1994)).[1]  Indeed, "[t]he agreement, a defendant's guilty knowledge and a defendant's participation in the conspiracy all may be inferred from the 'development and collocation of circumstances.' " *United States v. Posada-Rios*, 158 F.3d 832, 857 (5th Cir. 1998)(quoting *United States v. Maltos,* 985 F.2d 743,

---

[1] *See also United States v. Bermea*, 30 F.3d 1539, 1552 (5th Cir. 1994) ("Among the factors that may be considered by the factfinder in determining whether a defendant is guilty of committing a drug conspiracy crime are concert of action, presence among or association with drug conspirators, and evasive and erratic behavior." (citation and internal quotation marks omitted)).

746 (5th Cir.1992)).; *see also United States v. Ayala*, 887 F.2d 62, 67-68 (5th Cir. 1989).

"Although to be guilty a defendant must voluntarily participate in the conspiracy, he need only

play a minor role in the overall scheme." *Ayala*, 887 F.2d at 67-68 (citing*United States v.*

*Gonzales,* 866 F.2d 781, 788 (5th Cir.1989)).   "[A] defendant need not know all of the specific

details of the conspiracy, need not know all of the other conspirators, and need not have ever

physically touched any of the drugs involved in the conspiracy."  *Daniels,* 723 F.3d at 575

(citation omitted).  Moreover, "[o]nly slight evidence is needed to connect an individual to an

illegal conspiracy once the [government] has produced evidence of that conspiracy." *United*

*States v. Thomas*, 12 F.3d 1350, 1359 (5th Cir. 1994)(citation and internal quotation marks

omitted).

     The Government also need not prove an overt act to show participation in a conspiracy.

*United States v. Bermea,* 30 F.3d 1539, 1552 (5th Cir.1994); *see United States v. Turner*, 319

F.3d 716, 721 (5th Cir. 2003). Though not sufficient alone to prove participation in a conspiracy,

presence and association may be considered by the jury along with other circumstantial evidence

in finding that the defendant participated in a conspiracy. *See United States v. Chavez,* 947 F.2d

742, 745 (5th Cir.1991). However, "[a] defendant may not . . . be convicted of a drug conspiracy

merely by evidence that he associated with other drug conspirators or by evidence that places the

defendant in 'a climate of activity that reeks of something foul.'" *Posada-Rios*, 158 F.3d at 857-

58 (citation omitted).

     When weighing the testimony, "[a]s long as it is not factually insubstantial or incredible,

the uncorroborated testimony of a co-conspirator, even one who has chosen to cooperate with the

government in exchange for non-prosecution of leniency, may be constitutionally sufficient

evidence to convict." *Turner*, 319 F.3d at 721 (5th Cir. 2003)(quoting *United States v.*

*Westbrook,* 119 F.3d 1176, 1190 (5th Cir.1997))(internal quotation marks omitted); *see Bermea,* 30 F.3d 1539, 1552 (5th Cir. 1994)("We have held that a guilty verdict may be sustained if supported only by the uncorroborated testimony of a coconspirator, even if the witness is interested due to a plea bargain or promise of leniency, unless the testimony is incredible or insubstantial on its face."). "Testimony is incredible as a matter of law only if it relates to facts that the witness could not possibly have observed or to events which could not have occurred under the laws of nature." *United States v. Bermea*, 30 F.3d 1539, 1552 (5th Cir. 1994)(citations omitted)

As to the Defendant's assertion that multiple conspiracies may be found rather than a single conspiracy, "[a] single conspiracy can be found when the indictment adequately shows a singular conspiratorial objective, such as a large-scale narcotics transaction." *United States v. Metz,* 608 F.2d 147, 153 (5th Cir.1979), *cert. denied,* 449 U.S. 821, 101 S.Ct. 80, 66 L.Ed.2d 24 (1980).  Whether a single conspiracy or multiple conspiracies existed is a question of fact for the jury to determine. *United States v. Michel*, 588 F.2d 986 (5th Cir. 1979); *United States v. Rodriguez,* 509 F.2d 1342 (5th Cir. 1975).  There are various factors typically considered in making a determination as to whether a given criminal endeavor comprises one, or more than one, conspiracy. *United States v. Elam*, 678 F.2d 1234, 1246 (5th Cir. 1982). These factors include: "(1) the existence of a common goal; (2) the nature of the scheme; and (3) the overlapping of the participants in the various dealings." *United States v. Morris,* 46 F.3d 410, 415 (5th Cir. 1995).

The Fifth Circuit has broadly defined this criterion and has adopted an expansive notion of a "common purpose," finding a common purpose existed where, for example, there was a plan to purchase cocaine involved various participants over three years or where there were a series of

staged automobile accidents involved different participants, in different locations, and over an extended period of time. *Morris*, 46 F.3d at 415 (citations omitted).  As to the nature of the scheme, "[i]f there is one overall agreement among the various parties to perform different functions in order to carry out the objectives of the conspiracy, then it is one conspiracy." *United States v. Perez*, 489 F.2d 51, 62 (5th Cir. 1973). The Fifth Circuit has said:

> Where the activities of one aspect of the scheme are necessary or advantageous to the success of another aspect of the scheme or to the overall success of the venture, where there are several parts inherent in a larger common plan, or where the character of the property involved or the nature of the activity is such that knowledge on the part of one member concerning the existence and function of other members of the same scheme is necessarily implied due to the overlapping nature of the various roles of the participants, the existence of a single conspiracy will be inferred.

*Elam*, 78 F.2d at 146 (citations omitted). Thus, "[i]f [an] agreement contemplates bringing to pass a continuous result that will not continue without the continuous cooperation of the conspirators to keep it up, then such agreement constitutes a single conspiracy." *Perez,* 489 F.2d at 62.  Finally, as to the overlapping of the participants in the conspiracy, "[t]he more interconnected the various relationships are, the more likely there is a single conspiracy. " *Morris*, 46 F.3d at 416. The members of a conspiracy which functions through a division of labor need not have an awareness of the existence of the other members, or be privy to the details of each aspect of the conspiracy. *Elam,* 678 F.2d at 1246.  Moreover, "[t]here is no requirement that every member must participate in every transaction to find a single conspiracy. Parties who knowingly participate with core conspirators to achieve a common goal may be members of an overall conspiracy." *United States v. Richerson,* 833 F.2d 1147, 1154 (5th Cir.1987); *see United States v. DeLeon*, 641 F.2d 330 (5th Cir. 1981).

The Defendant alleges that the Government failed to prove (1) the common goal alleged in the indictment (a "more than five year concerted effort to control crack sales in an area of New

Orleans to the benefit of the alleged co-conspirators"); (2) any interdependence in the actions or roles of the alleged conspirators in order to accomplish the goal of the conspiracy; and (3) any overlap between the activities of the alleged co-conspirators to accomplish the goal of the conspiracy.  R. Doc. 230, 2.  Rather, Defendant asserts that the Government's theory presented no conspiracy other than the "hub" of the Allens' grandmother's home on Simon Bolivar Avenue. In response, the Government cites to the testimony of Keoka Wright, Nukema Frith, Mark Rayfield, Eugene Allen, Emanuel Casame, and Isaac Thompson as support for the existence of an agreement and of Burnell Allen's participation in the agreement.

At trial, the Government presented evidence from various witnesses and co-conspirators in support of the charges brought against the Defendant.  Officer Brian Pollard testified that, beginning in 2009, he witnessed Gie Preston, Lionel Allen, Burnell Allen, Mark Rayfield, and Emanual Casame conducting hand-to-hand narcotics transactions in the 1200 block of Simon Bolivar Avenue where Burnell Allen's grandmother lived. He also testified that this activity continued "morning to night" over a period of years.  These individuals were indicted as co-conspirators in the Superseding Indictment along with Burnell Allen. (R. Doc. 35, 1-2).

In addition to Officer Pollard's testimony, the Government produced witnesses who observed the Defendant and the alleged co-conspirators engaging in crack cocaine distribution or purchased from the Defendant or his alleged co-conspirators. Nukema Frith testified that she has known Sonny Allen and Burnell Allen since she was 12 years old and had observed Burnell Allen, Sonny Allen, and Gie Preston selling cocaine near the Allens' grandmother's house for years. She also testified that she purchased crack from all three while they were in the same vicinity and that she never saw them compete for customers. Brandy Dwyer testified that she observed Gie Preston, Burnell Allen, and Sonny Allen sell crack on various occasions between

2011 and 2012 "all day, every day" around the same location. Keoka Wright testified that she saw Sonny Allen, Gie Preston, and Burnell Allen "briefly meet and talk to crackheads" daily during 2008.

Eugene Allen testified that he sold crack around the grandmother's house along with Sonny Allen, Gie Preston, and Burnell Allen and that they "each took turns" selling crack. Eugene Allen also stated that they were "hustling for [them]selves" and each kept whatever money they earned.  Based on video surveillance evidence presented at trial, Eugene Allen testified that the video depicted Burnell Allen selling crack cocaine.  He testified, however, that after the arrest for the drug crimes which resulted in his 2007 arrest, that "everyone went their separate ways."  Mark Rayfield testified that Burnell Allen, Gie Preston, and Sonny Allen would sell narcotics near each other around the Allens' grandmother's house. Rayfield stated that Burnell Allen would give him crack to sell on consignment and that, on one occasion in 2010, Burnell told him to go back to the Allens' grandmother's house referring to it as "everyone's stash place" to retrieve an ounce of crack cocaine.  Rayfield testified that the Allens left their stashes in the backyard of the grandmother's house while Gie Preston left his stash in another location. Also, according to Rayfield, the three alleged co-conspirators stole cash and drugs from each other frequently. Emanuel Casame testified that Sonny Allen, Burnell Allen, and Gie Preston sold narcotics around the Allens' grandmother's house and would buy cocaine from Sonny Allen for resale; he also stated that Burnell Allen would sell cocaine to Sonny Allen and Gie Preston. He testified that, on at least two occasions, Gie Preston, Burnell Allen, and Sonny Allen pooled their money together to buy cocaine from Isaac Thompson, a narcotics distributer.

Isaac Thompson testified that between 2011 and 2012 he sold Burnell Allen between one to two ounces (28-56 grams) of powder cocaine every two weeks, which even through

conversion to crack cocaine, yielded an equal amount of crack cocaine in weight.  Thompson testified that he knew the Defendants were converting the powder cocaine to crack cocaine because they had complained about the conversion process.

Having reviewed the evidence at trial, the Court finds that the evidence at trial was sufficient to support a rational jury's finding that a single drug conspiracy existed and preponderates in favor of the verdict.  From evidence of their concerted actions, a rational jury could infer that Burnell Allen and the other alleged co-conspirators did form and voluntarily participate in a tacit agreement. Officer Pollard's testimony established that the Defendant and his co-conspirators, through their conduct, evidenced an agreement with a common goal of a concerted effort to control crack cocaine sales in a specific area of New Orleans for the mutual benefit of the co-conspirators.  Though Defendant argues that the co-conspirators worked at odds with each other, the majority of the testimony presented suggested otherwise.  That the Defendant did not share profits with the other co-conspirators ("hustl[ed]" for himself as Eugene Allen testified) or even stole from his co-conspirators does not reveal a lack of a common goal and agreement.  There need not be a "*formal* agreement to violate narcotics laws" for a conspiracy to exist. *United States v. Mitchell*, 484 F.3d 762, 769 (5th Cir. 2007)(emphasis added).  Testimony from Officer Pollard, Nukema Frith, Brandy Dwyer, Keoka Wright, Mark Rayfield, and Emmanuel Casame established that the Defendant and the co-conspirators sold crack cocaine and stashed their supply in the same location.  Moreover, what the co-conspirators did not share in profits they shared in the ability to sell crack cocaine individually in the same area (the Allens' grandmother's house) without direct competition.  The testimonial evidence at trial established also established that the co-conspirators would take turns selling crack cocaine, sell to each other and purchased from the same distributor on regular bases, and that, on at least

two occasions, the Defendant and two of his co-conspirators pooled money on one occasion to purchase powder cocaine from a distributor.

The nature of the scheme presented at trial evidenced both interdependence between the co-conspirators as well as overlapping actions taken in furtherance of the common goal of the conspiracy. The nature of the scheme involved each member selling crack cocaine individually, yet remaining part of the same common goal of mutually selling crack cocaine to their own individual benefit. While Defendant suggests that the only evidence of commonality would be the "hub" at the Allens' grandmother's house and that the activity would continue notwithstanding a co-conspirator's absence, the evidence at trial established that the co-conspirators "went their separate ways" after Eugene Allen's 2007 arrest and that the conspirators used the location to their mutual benefit as stated above.

Although Defendant implies that multiple conspiracies might have existed in his Motions, the Defendant does not offer any argument as to what the conspiracies might have been. Nevertheless, witness testimony that the the co-conspirators sold crack cocaine alongside each other all day around the same central location (the Allens' grandmother's house) for a number of years supports the jury's finding that one conspiracy (as charged) existed rather than multiple conspiracies.

Viewing the evidence in the light most favorable to the prosecution, and drawing all reasonable inferences in favor of the verdict, the Court finds that, for the aforementioned reasons, the evidence was sufficient such that a rational juror could have found Burnell Allen guilty of conspiracy under 21 U.S.C. § 846 as charged in Count 1 beyond a reasonable doubt. Thus, the Defendant has not demonstrated that no rational trier of fact could have found the

essential elements of the crime of conspiracy proven beyond a reasonable doubt and is not entitled to acquittal.

In addition, having reviewed the trial testimony and evidence, the Court finds that the weight of the credible witness testimony militates in favor of the verdict, rather than tangentially supporting it. The Court finds that the evidence was not so insufficient as to create a miscarriage of justice and preponderate against the verdict.  Finding no exceptional circumstances warranting a new trial in this matter and exercising its discretion, the Court finds that the Defendant has not presented sufficient grounds for a granting of a new trial.

**B.       Drug Amount Involved in the Conspiracy**

In addition to the elements of conspiracy, "where 'the government seeks enhanced penalties based on the amount of drugs under 21 U.S.C. § 841(b)(1)(A) or (B), the drug quantity must be stated in the indictment and submitted to the fact finder for a finding of proof beyond a reasonable doubt.'" *United States v. Walker*, No. 13-40689, 2015 WL 735323, at *11 (5th Cir. Feb. 23, 2015) (quoting *Daniels,* 723 F.3d at 570). Nevertheless, the Fifth Circuit held in *Daniels* that:

> [W]here a defendant may be subject to enhanced statutory penalties because of drug quantity or type, the requisite fourth "element" under Apprendi is not a formal element of the conspiracy offense. Hence, defendants' challenges to the quantity of cocaine charged in ... the indictment do[ ] not go to the validity of their convictions, but rather to the sentence that the district court may impose.

*Id.* at *12 (quoting Daniels, 723 F.3d at 573).  Thus, the conviction remains unaffected by the sufficiency of the evidence as to the amount of drugs involved, which is not a formal element of the offense, and the Court will not consider the Defendant's argument as to evidence demonstrating the amount of drugs involved in the offense at this time.

### C.      Statute of Limitations

The Defendant asserts that his conviction for the drug conspiracy charged in Count 1 should be dismissed because of the five-year statute of limitations set forth in 18 U.S.C. § 3282(a).  Defendant argues that the Superseding Indictment was returned on June 6, 2013, and that the Government has failed to meet its initial burden of showing that the conspiracy was on-going during the five-year statute of limitations period according to the statute or after June 6, 2008.  Defendant asserts that the Government's evidence showed that the last criminal activity Burnell Allen engaged in occurred in December of 2007.  The Government avers, however, that the Defendant is barred from raising the issue in post-conviction proceedings as the issue was not raised as a defense at trial, citing *United States v. Lewis*, 2014 U.S. App. LEXIS 23049 (5th Cir. 2014).  Nevertheless, the Government argues that, had the issue been raised at trial, the evidence defeats this argument.  Testimony from Emmanuel Casame that he was present when Burnell Allen, Sonny Allen, and Gie Preston pooled their money together to buy drugs on at least two occasions in 2010 and 2011 and from  Isaac Thompson Burnell Allen regularly bought powder cocaine from Thompson between 2011 and 2012 refutes Defendant's argument.

The crime of conspiracy carries a five-year statute of limitations under 18 U.S.C. § 3282(a).  *Smith v. United States*, 133 S. Ct. 714, 719 n.4, 184 L. Ed. 2d 570 (2013) ("The conspiracy statutes at issue here do not contain their own limitations periods, but are governed by § 3282(a)…").  "Upon joining a criminal conspiracy, a defendant's membership in the ongoing unlawful scheme continues until he withdraws. A defendant who withdraws outside the relevant statute-of-limitations period has a complete defense to prosecution." *Id.* at 717.  "[A] defendant's membership in the conspiracy, and his responsibility for its acts, endures even if he is entirely *inactive* after joining it." *Smith*, 133 S.Ct. at 721.  Thus, provided the Government establishes

15

evidence at trial that an overt act was taken by a conspirator during the statute of limitations period, "[a] defendant is presumed to continue involvement in a conspiracy unless that defendant makes a substantial affirmative showing of withdrawal, abandonment, or defeat of the conspiratorial purpose." *United States v. Myers*, 20 F.3d 468 (5th Cir. 1994)(citation omitted); *see United States v. Brown,* 332 F.3d 363, 374 (6th Cir. 2003).   The defendant has the burden of proving withdrawal because it is an affirmative defense.  *See Brown,* 332 F.3d at 374*; see also Smith*, 133 S.Ct. at 721; *Myers*, 20 F.3d 468 ("[T]his court has previously held that withdrawal from a conspiracy is an affirmative defense that must be raised at trial.").

Fifth Circuit jurisprudence is clear that a limitations defense is an affirmative defense that is waived on appeal if not previously raised at trial.  *See United States v. Arky,* 938 F.2d 579, 582 (5th Cir. 1991); *United States v. Musacchio*, 590 F. App'x 359, 363-64 (5th Cir. 2014) *cert. granted*, No. 14-1095, 2015 WL 1055788 (U.S. June 29, 2015).  Applying the same reasoning, the Fifth Circuit has also held that a limitations defense cannot be raised for the first time in a post-conviction motion. *United States v. Lewis*, 774 F.3d 837, 845 (5th Cir. 2014).[2]  Thus, this Court will adhere to the current Fifth Circuit jurisprudence on this point and finds that the Defendant waived the affirmative defense based on the statute of limitations by raising the argument for the first time in a post-conviction motion and failing to raise the argument at trial.

## IV.    CONCLUSION

---

[2] In *Lewis,* the Fifth Circuit explained that the limitations defense must be asserted at trial "because defenses such as a statute of limitations defense will, in many cases, turn on disputed factual issues. If defendants were allowed to raise a limitations defense after a conviction, the prosecution would be prevented from introducing evidence to rebut the defense. *Cf. United States v. Cook,* 84 U.S. 168, 179–80, 17 Wall. 168, 21 L.Ed. 538 (1872) (explaining that the rationale for requiring the statute of limitations defense to be raised at trial is to allow the prosecutor to present evidence in order to rebut the defense)."  774 F.3d at 845.

For the reasons set forth herein, the Court finds that the Defendant, Burnell Allen, is not entitled to acquittal of the charge of conviction and finds no grounds upon which to grant a new trial.  Accordingly,

**IT IS ORDERED** that the Defendant Burnell Allen's Motion for Judgment of Acquittal (R. Doc. 30) and Motion for New Trial (R. Doc. 229) are **DENIED.**

New Orleans, Louisiana, this 14th day of _____ July _____, 2015.

_____
**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT JUDGE**

17